IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                       No. 07-10082 B

ANTWAUN MORTON,

    Defendant.
_____

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
_____

    Before the Court is the motion of the Defendant, Antwaun Morton, to suppress evidence. The Defendant was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Morton has moved to suppress evidence obtained by the Government in connection with the search of a residence on the grounds that the search warrant therefor was not properly procured and, therefore, the search violated his rights under the Fourth Amendment of the United States Constitution.

    At a hearing conducted on August 28, 2009, the Government presented the testimony of Charles Willis and Jason Singleton. The relevant testimony proffered by these witnesses is as follows. Willis has been employed for ten years by the Brownsville Police Department. At approximately 6:00 p.m. on November 28, 2006, he responded to a shots fired call on Stehlin Street in Brownsville. He was the first officer to arrive, and observed a group of three people, one of whom was Morton, standing outside a duplex at 296 Stehlin Street attempting to remove the keys from a vehicle parked in the driveway. Willis walked around the vehicle and noticed a spent shell casing on the ground close by. He spoke to the Defendant about what had happened and about the

shots fired call. Morton responded that he heard the shots and that they came from the north. The officer did not believe Morton based on the presence of the shell casing. He asked Morton how he knew the shots came from north of his residence and whether he had seen someone shooting. The Defendant replied that he had not. The officer asked how Morton could run right past the location of the shell casing and yet see no one. The Defendant stated only that he had run into the duplex.

At that point, Willis requested Investigator Singleton to come to the scene. He arrived some ten minutes later. Willis showed Singleton the shell casing, along with another he had discovered, and advised him of the information received from Morton. The two continued to speak with the Defendant. Singleton contacted dispatch and the complainant. The investigator also talked with Morton's mother in an attempt to obtain consent to search the duplex. She refused. Singleton then left to obtain a search warrant while Willis remained on the scene. Singleton returned with a search warrant approximately thirty to forty-five minutes later.

Singleton, employed by Brownsville Police Department since 2001, testified that, upon arriving at the shots fired call, he met Morton and his mother in an attempt to ascertain what had happened. Morton would not talk to him. Singleton also spoke with the complaining individual at about 6:30 p.m., some fifteen minutes after the report was called in. This individual was known to the officer and had no criminal record. She informed him that there were two males arguing at the scene of the shots. One she identified as Morton, whom she knew, and the other she did not recognize. She reported that the other individual stated "He's trying to kill me." Singleton initially testified at the hearing that Morton did not respond to the statement. However, after reviewing the affidavit, the officer recalled that it was reported Morton in fact responded by stating, "I wasn't shooting at you." He received no other information from the complaining party.

Singleton conducted an investigation and spoke with Willis, who told him that he found two .45 shell casings, one in the yard of Morton's home and one on the sidewalk. Singleton himself observed the casings, which were still in their original positions. He recalled that the casings were approximately ten to fifteen feet from Morton's front door. Initially, Singleton had no knowledge of Morton's criminal background but requested and received criminal history information from central dispatch prior to preparing the affidavit for a search warrant. He then spoke to the homeowner and asked for consent to search the Defendant's residence. She refused. Singleton returned to the station in order to prepare an affidavit and application for a search warrant.

A state court judge met Singleton at the police station. The officer was placed under oath. Thereafter, he provided the judicial officer with information concerning the identity of the citizen informant. In response to the judge's query as to whether that person had a criminal background, the officer responded in the negative. Singleton further advised the judge that there was a shots fired report at the residence and officers detained subjects at the scene. He related that there were two shell casings found, which led the officer to seek a search warrant for the premises after being refused consent to search. The officer testified he also aware that Morton had gone into the residence but could not recall whether that information was conveyed to the judge. Nor could he remember whether the judge asked any other questions.

On cross-examination, Singleton stated that when he arrived some six to seven minutes after the call went out, three officers were already on the scene. Morton was locked in a cruiser and his mother was standing on the porch. There were no others nearby, as it is customary for officers arriving on a crime scene to move spectators away. After his arrival, he called dispatch and was given the complaining citizen's telephone number. He then phoned the complainant and interviewed

3

her over the phone. No further statements were received from the informant. Singleton asked Morton's mother as she stood in the front yard what had happened, to which she replied that she was unsure. At that point he asked for consent and was refused. He did not interview other persons in the vicinity. Singleton was at the residence for approximately fifteen to twenty minutes, left in order to obtain the warrant, and returned about fifteen or twenty minutes later.

The officer described the property at issue thusly: The structure was located in a rough public housing area of town where drug and other problems were frequent. The duplex was one of two on Stehlin Street. "It's a driveway. Maybe two or three cars can go in at the same time. And then from there, you either go up a walkway to the right side of the apartment or to the left side of the apartment." Cars would be parked in front of the unit with a yard area and sidewalk in between. Both walkways end up at the same common porch. Morton's mother resided on the right side of the duplex. He did not recall it being completely dark, but the street lights were on.

According to Singleton, the interview with the judge was not recorded and his statements to the judge were not written down. He could not recall whether the judge took notes. At the time he was present at the duplex and when he obtained the warrant, the officer had no knowledge that the shell casings matched a gun that might have been used in the shooting.

The affidavit read as follows:

> On November 29, 2006 at 1813 hours I received information from a concerned citizen who stated that he/she observed two males arguing at 296 Stehlin. One male he/she couldn't recognize and the other male he/she seen was Antwaun Morton. He/she stated that she heard two shots and one male stated he trying to kill me. And then Antwaun Morton stated I wasn't shooting at you. Antwaun Morton then went into the residence. Officers then arrived at said residence. At that time officers checked the person of Antwaun Morton and did not recover a weapon. Officers did recover two .45 shell casings in the yard and walk way to residence to-wit: Affiant has known said concern citizen for over 20 years. This concern citizen has no criminal record and is not a part of the criminal milieu. Antwaun Morton has been

4

convicted of a felony involving the use of force in violence, i.e., robbery. The affidavit indicated that officers had reason to believe Morton was in possession of a handgun and ammunition used in the commission of an aggravated assault.

The Defendant argues in his motion to suppress that the judge lacked probable cause to issue the warrant as it provided insufficient information showing the reliability of the informant, the basis for her information and when she saw and heard the occurrences described in the affidavit. He also avers that the information provided by the informant was stale.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Generally, this means that, with some specifically delineated exceptions, every governmental search and seizure must be made pursuant to a warrant." United States v. Taylor, 248 F.3d 506, 511 (6th Cir.), *cert. denied*, 534 U.S. 981, 122 S. Ct. 414, 151 L. Ed. 2d 315 (2001). Evidence obtained by a warrantless search and seizure that violates the Fourth Amendment is inadmissible in a criminal trial. United States v. Wright, 16 F.3d 1429, 1434 (6th Cir.), *cert. denied,* 512 U.S. 1243, 114 S. Ct. 2759, 129 L. Ed. 2d 874 (1994).

"In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that indicates a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Dyer, ___ F.3d ___, 2009 WL 2851304, at *2 (6th Cir. Sept. 8, 2009) (quoting United States v. Jenkins, 396 F.3d 751, 760 (6th Cir. 2005)) (internal quotation marks omitted). The Court's conclusion in this regard depends on the totality of

the circumstances. Illinois v. Gates, 462 U.S. 213, 230-31, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527 (1983). "[A] hypertechnical critique of warrants would only, in the end, encourage warrantless searches, undermining the very Fourth Amendment right such an approach would seek to protect." United States v. Allen, 211 F.3d 970, 973 (6th Cir.) (en banc), *cert. denied,* 531 U.S. 907, 121 S. Ct. 251, 148 L. Ed. 2d 181 (2000). Great deference is to be accorded to the issuing magistrate's determination of probable cause, which "should only be reversed if it was arbitrarily exercised." Id.

"It is well established that a magistrate may rely on hearsay evidence in making his probable cause determination." United States v. Gunter, 551 F.3d 472, 479 (6th Cir. 2009), *pet. for cert. filed* (No. 08-11110) (June 23, 2009). "When confronted with hearsay information from a confidential informant, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005) (quoting United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003)) (internal quotation marks omitted). "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informant['s] reliability, courts insist that the affidavit contain substantial independent police corroboration." Id. (internal citation omitted). "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." Allen, 211 F.3d at 975. In doing so, courts are to bear in mind that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation." United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996), *reh'g denied* (Apr. 7, 1998) (internal quotation marks omitted). An affidavit coupled with an officer's sworn testimony may provide a sufficient basis for a magistrate to conclude probable cause exists for the issuance of a search

6

warrant. United States v. Harris, 255 F.3d 288, 293 (6th Cir.), *cert. denied*, 534 U.S. 966, 122 S. Ct. 378, 151 L. Ed. 2d 288 (2001).

In arguing that the issuing judge lacked probable cause to issue the warrant because the affidavit failed to provide sufficient information to demonstrate the reliability of the informant, the Defendant relies on Allen. In that case, officers received a tip from a confidential informant that a particular individual was in possession of cocaine. Allen, 211 F.3d at 971. The officer who obtained the warrant stated in his affidavit that he had known the informant for five years and that the informant had given him information concerning persons involved in criminal activity in the past that proved to be reliable. Id. at 971-72. The affidavit stated that the informant's name was disclosed to the magistrate in applying for the warrant. Id. The Sixth Circuit found that "[a]t bottom, we return to the basics of the Fourth Amendment: is there 'probable cause' to believe that evidence of a crime will be found in the search? We hold that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found." Id. at 976 (emphasis in original). It is the position of the Defendant that, unlike the Allen affidavit, the affidavit submitted by Singleton did not name the informant and provided no information regarding her reliability.

"[E]ven where law enforcement does not name an informant in the affidavit or receives information from an informant whose reliability is not established, probable cause may exist 'when there is some independent corroboration by the police of the informant's information.'" United States v. Gregory, 311 F.App'x 848, 856 (6th Cir.), *cert. denied*, ___ U.S. ___, 129 S. Ct. 2880, 174 L. Ed. 2d 590 (2009) (quoting United States v. Jackson, 470 F.3d 299, 307 (6th Cir. 2006)). Facts

7

supporting the reliability of an informant need not take any particular form. United States v. McCraven, 401 F.3d 693, 697 (6th Cir.), *cert. denied*, 546 U.S. 1010, 126 S. Ct. 639, 163 L. Ed. 2d 517 (2005). "The affidavit could state that police corroborated significant parts of the informant's story. . . . Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." Id. (internal citations omitted). The statements of informants whose identities are known to the affiant officer "and who would be subject to prosecution for making a false report " are entitled to much greater weight than those from an anonymous source. Dyer, 2009 WL 2851304, at *4 (citing United States v. May, 399 F.3d 817, 824-25 (6th Cir. 2005)).

"A warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location. In reviewing whether a probable cause finding is stale, [the] court should consider the defendant's course of conduct, the nature and duration of the offense, the nature of the relevant evidence, and any corroboration of the information." Jackson, 470 F.3d at 308 (internal citation omitted). The staleness inquiry is "tailored to the specific circumstances in each case." United States v. Abboud, 438 F.3d 554, 572 (6th Cir.), *cert. denied*, 549 U.S. 976, 127 S. Ct. 446, 166 L. Ed. 2d 309 (2006).

In this case, even though the identity of the citizen informant was not included in the affidavit, Singleton relayed identifying information to the issuing judge. The affidavit recited the citizen's lack of a criminal background and the length of the affiant's long association with her. It further set forth a detailed statement of the citizen's report that she personally observed two men

8

arguing, one of whom was the Defendant, and heard a shot. She also recalled a statement by Morton indicating "I wasn't shooting at you." This information was in part independently corroborated by evidence obtained by the officers at the scene, including the presence of the shell casings near the Defendant's residence. *See* United States v. Mayes, No. 06-CR-314, 2007 WL 486601, at *4 (E.D. Wis. Feb. 12, 2007) (discovery of shell casings at scene substantiated citizen's report of shots fired for purposes of obtaining warrant). In addition, the circumstances of this case indicate that probable cause did not become stale between the time the citizen reported the shots and the time, later the same day, when the search warrant was sought. *See* United States v. Poulos, No. 07-99-P-S, 2008 WL 222272, at *10 (D. Me. Jan. 25, 2008) (information that defendant possessed a gun not stale where officers obtained a warrant within a day of taking a complaint from upstairs neighbors of a bullet hole in their apartment). The Court finds, based on the totality of the circumstances, that probable cause existed for issuance of the search warrant.

Even if there was not probable cause, however, the fruits of the search would be admissible under United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In Leon, the United States Supreme Court held that the Fourth Amendment's exclusionary rule "should not be applied so as to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." Leon, 468 U.S. at 897, 104 S. Ct. at 3407. Rather, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926, 104 S. Ct. at 3422. Thus, it has been held that Leon's good-faith exception has no application when "1) the supporting

affidavit contained knowing or reckless falsity[;] 2) the issuing magistrate failed to act in a neutral and detached fashion and served merely as a rubber stamp for the police; 3) the suppporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause; or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable." United States v. Hammond, 351 F.3d 765, 773-74 (6th Cir. 2003). There is simply no evidence that any of these occurred here.

For the reasons set forth herein, the motion to suppress is DENIED.

IT IS SO ORDERED this 29th day of September, 2009.

                               s/ J. DANIEL BREEN
                               UNITED STATES DISTRICT JUDGE